UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STACI TALAMONTI, | § § § § | |
| Plaintiff, | | |
| VS. | § § § § § § § | CIVIL ACTION NO. 4:22-CV-03970 |
| M/I HOMES OF HOUSTON, LLC, | | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Before the Court is the defendant's, M/I Homes of Houston, LLC, pending motion to dismiss the plaintiff's original complaint. (Doc. #5). The defendant's motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6), asserting that the plaintiff's original complaint fails to set forth facts permitting the Court to deem the contractual agreement in dispute unenforceable under Title VII. The Court, being duly advised of the premises, GRANTS said motion.

### II.   FACTUAL BACKGROUND

This action stems from the defendant's termination of the plaintiff's employment, and whether the circumstances surrounding the plaintiff's signature of the defendant's severance agreement (the "Agreement") deem it unenforceable.

On June 16, 2016, the plaintiff was recruited to work for the defendant's marketing department. Prior to the plaintiff's employment with the defendant, the plaintiff was

formally diagnosed with ADHD, major depressive disorder, asthma, irritable bowel disease and anxiety. However, the plaintiff's work performance led to bonuses and wage increases in 2016 and 2017.

In April of 2018, the defendant promoted Kathy Delgado ("Delgado") to Vice President of Sales and Marketing, effectively, making Delgado the plaintiff's supervisor. Subsequently, Delgado engaged in inappropriate behavior, asking employees, including the plaintiff, personal questions about their personal medical history. Delgado specifically questioned the frequency of the plaintiff's medical appointments. Her behavior caused the plaintiff discomfort. Consequently, the plaintiff reported Delgado's conduct to the defendant's human resources department. ("HR"). Nevertheless, the plaintiff received a bonus and wage increase in 2018.

In 2019, Delgado continued to inquire into the plaintiff's medical history and doctor appointments. Moreover, the plaintiff overheard discussions in a meeting between Delgado and HR concerning ways to timely fire a new employee suffering from mental disabilities so as to avoid violations of the Family Medical Leave Act ("FMLA") and Age Discrimination Act ("ADA"). Subsequently, the new employee was fired. This event caused the plaintiff discomfort with disclosing her mental diagnosis to the defendant. However, following the new employee's termination, the plaintiff disclosed her medical diagnosis and requested FMLA leave to circumvent Delgado's intrusive questioning. When the plaintiff sought FMLA, HR asked the plaintiff, a salaried employee, to record her hourly workdays and to take a personality test to document her condition.

In late 2019, the Area President, Jay McManus and Delgado, held a meeting with the plaintiff to discuss a performance improvement plan. After the meeting, the plaintiff lodged a complaint to HR asserting that Delgado's and McManus' treatment towards her changed after she disclosed her mental health diagnosis. In response, HR assured the plaintiff that no discrimination had occurred, and no investigation ensued. In the meantime, the frequency of the plaintiff's psychiatrist appointments increased and, according to the plaintiff, her health continued to decline. As a result, in December of 2019, the plaintiff took short-term disability leave. Notwithstanding, the plaintiff still received a bonus and wage increase in 2019.

The plaintiff retuned to work in 2020. In response to COVID-19, the defendant implemented a work from home policy, but required the plaintiff to have a daily check-in call with Delgado. According to the plaintiff, the defendant did not impose this requirement on any other employee within the marketing department. When critique of the plaintiff's work product continued, the plaintiff again reported that she was receiving disparate treatment to HR, but to no avail.

In 2021, the plaintiff continued to report her superiors' treatment to HR. On March 30, 2021, the Vice President of HR, Karla Cupp, terminated the plaintiff. She informed the plaintiff that: (1) the plaintiff's health insurance would expire at midnight the following day; (2) Cupp understood how important insurance was to the plaintiff; and (3) the defendant was offering her the Agreement. In response, the plaintiff expressed her inability to afford an attorney to review the termination Agreement. Cupp stressed the need for the

plaintiff to sign the document if her insurance was to continue. The plaintiff signed the document, agreeing to accept the monetary payment and continued insurance coverage.

After obtaining a "right to sue" letter from the Equal Employment Opportunity Commission, the plaintiff sued the defendant, asserting claims under the ADA, 42 U.S.C. § 12101 *et seq.*, and FMLA retaliation under 29 U.S.C. § 2601/ 29 CFR § 825.220, *et seq.* The defendant now moves to dismiss this action.

### III.   CONTENTIONS OF THE PARTIES

The defendant contends that the Agreement is enforceable, and that the plaintiff has failed to raise any arguments that permit the Court to deem the contract unenforceable. The defendant further asserts that the plaintiff's complaint fails to establish an invalid release of claims, evidence of duress, or unconscionability. Finally, the defendant asserts that, even if the plaintiff could establish the voidability of the Agreement, the Agreement would still retain its validity because the plaintiff ratified it.

The plaintiff opposes the defendant's motion, asserting that the elements of duress and unconscionability have been satisfied through the conduct of the Vice President of HR, Cupp, in that she pressured the plaintiff to sign the Agreement with full knowledge that the plaintiff could not afford to hire a lawyer to review the Agreement. Specifically, she informed the plaintiff that her signature was time sensitive.

### IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc*., 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "specific facts are not necessary, the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." A court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc*., 394 F.3d 285, 288 (5th Cir. 2004).

## V.   ANALYSIS AND DISCUSSION

The interpretation and validity of a release of claims under Title VII is governed by federal law. *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994). A release of a Title VII claim is valid only if it is "knowing and voluntary." *Rogers v. Gen Elec. Co.*, 781 F.2d 452, 454 (5th Cir. 1986). The employer bears the burden of establishing that its former employee signed a release, received adequate consideration, and breached the release. *Id*. Once established, the burden shifts to the employee to establish that the release

is invalid due to "fraud, duress, material mistake, or some other defense." *Williams*, 23 F.3d at 935.

To ensure a former employee has met her burden, courts examine "the following factors: (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002).

The evidence shows that a meeting was held between the plaintiff and Cupp where the plaintiff was offered the Agreement, told the terms of the Agreement, and decided to sign the Agreement. Specifically, the defendant's proffer supports the view that the Agreement: provided four months of paid insurance premiums; a lump sum cash payment of $25,384.09; ten days for the plaintiff to review and sign; and seven days to revoke after signing. Given the *Rogers* standard, the burden shifts to the plaintiff to prove that the Agreement is invalid due to duress, fraud, mistake, or unconscionability.

The Court is of the opinion that the plaintiff has failed to do so and therefore cannot sustain a suit under the FMLA, the ADA, or Title VII. The plaintiff's conclusory assertion that she was under duress, and that the Agreement is unconscionable, belies the fact that she executed a document that permitted her seven days to rescind. Any claim of imbalance

in bargaining power is overcome by the plaintiff's failure to timely reverse course. Therefore, the Court finds the plaintiff fails to state a claim establishing the invalidity of the Agreement.

Even assuming, *arguendo*, the plaintiff could establish that the Agreement was invalid, the Agreement would become voidable and not void. *Wamsley v. Champlin Refining and Chemicals, Inc.*, 11 F.3d 534, 539 (5th Cir. 1993). *Wamsley* establishes that "justice and equity require the employee who seeks to avoid the obligations to which he agreed under the settlement agreement to return the consideration which he received for his promise not to sue." *Id*. at 542 Notably, the plaintiff's briefing is silent on this point, indicating that plaintiff retained the cash payment and has failed to return the payment. Therefore, the plaintiff has ratified the agreement; thus, barring her claims. *Wamsley,* 11 F.3d at 540.

## VI.   CONCLUSION

Based on the foregoing analysis the Court holds that the plaintiff has failed to state a claim of duress or unconscionability; thus, rendering the Agreement valid. Accordingly, the defendant's motion to dismiss (Doc. 5) is GRANTED.

It is so ORDERED.

SIGNED on March 6, 2023, at Houston, Texas.

_____
Kenneth M. Hoyt
United States District Judge